[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-12115
Non-Argument Calendar

_____

D.C. Docket No. 4:16-cv-00850-JHE

GRETA WASHINGTON,

Plaintiff-Appellant,

versus

SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(November 18, 2019)

Before TJOFLAT, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

Greta Lynn Washington appeals the district court's order affirming the Commissioner of Social Security's decision to deny her claim for Supplemental Security Income ("SSI") benefits.  We affirm.

## I.    BACKGROUND

On February 21, 2013, Greta Washington applied for SSI.  Washington was forty-four years old.  She previously worked as a cashier, housekeeper, hand packer, and flower nursery worker.  She alleged that her disability began on November 1, 2010, and that the following conditions limited her ability to work: "dislocated shoulder," "heel spurs," "high blood pressure," "bad ankles," "my left side constantly hurts," carpel tunnel, "back pain," and "artrist."  An administrative law judge ("ALJ") held a hearing on August 11, 2014, in which Washington presented the following evidence.

### A.  Medical Evidence Before the ALJ

In 2004, Washington reported to the emergency room with complaints of a dislocated shoulder.  In 2009 and 2010, she sought treatment for left ankle pain. The ankle x-rays revealed a calcaneal spur with mild to moderate degenerative joint disease, and Washington was prescribed medication and exercise.

In April 2013, Dr. Ronald Borlaza examined Washington.  Dr. Borlaza found that Washington walked normally; had decreased range of motion, tenderness, and moderate pain in her left shoulder; mild neck tenderness; and left

2

hip pain.  He also found that she had muscle strength of 5/5, except in her left shoulder where she had muscle strength of 4/5.  Dr. Borlaza diagnosed Washington with chronic left shoulder pain, bilateral carpal tunnel syndrome, and chronic left hip pain.  He opined that she had no limitations in standing, could walk for six to eight hours, had no limitations in sitting, and could lift 50 pounds occasionally and 25 pounds frequently.  Two months later, in June 2013, Washington sought treatment from Quality of Life Health Services for chest discomfort, left arm pain, left leg pain, and heel pain.  The physical exam showed edema in Washington's hands and feet.  A follow-up in July 2013 showed that Washington had tenderness and minimal spasm in her back and tenderness in her heels, but no edema.

Washington sought treatment next in March 2014, when she started seeing a new primary care physician, Dr. Pat Herrera.  At that time, Washington complained of left side pain, left leg pain, and breast pain.  At visits in March, April, and May 2014, Dr. Herrera reported no abnormal test results except with respect to the left leg raise test conducted in May.  In June 2014, Dr. Herrera again noted an abnormality with respect to Washington's left leg raise test and also noted that Washington had decreased sensation in her left leg.  In July 2014, Dr. Herrera completed an evaluation form about Washington.  On that form, Dr. Herrera opined that Washington could sit for a total of zero hours at a time and two hours

3

total during an eight-hour day;[1] could stand for one hour at a time and two hours total in an eight-hour day; and could walk for one hour at a time and two hours total in an eight-hour day.  Dr. Herrera also stated that Washington could occasionally use her arms, hands, legs, and feet for actions such as push/pull, frequently bend and reach, occasionally squat and crawl, and never climb.  Dr. Herrera also stated that Washington had moderate restrictions with respect to unprotected heights, moving machinery, and driving; mild limitations in terms of changes in temperature and humidity; and mild limitations with respect to dust, fumes, and gases.

B.  ALJ Decision

On October 31, 2014, the ALJ denied Washington's application.  The ALJ applied the five-step sequential evaluation for determining whether an individual is disabled.  See 20 C.F.R. § 404.1520(a). First, the ALJ decided that Washington had not engaged in substantial gainful activity since February 21, 2013.  Second, the ALJ found Washington had the severe impairments of obesity, plantar fasciitis, chronic left hip pain, bilateral carpal tunnel syndrome, depression, and anxiety. Third, the ALJ determined that Washington did not have any impairments that met or medically equaled the severity of the impairments listed in 20 C.F.R. § 404,

---

[1] The logical inconsistency between the number of hours Dr. Herrera said that Washington could sit at one time and the total number of hours he said she could sit in an eight-hour day plays a role in our subsequent discussion.

Subpart P.  Fourth, the ALJ determined that Washington could perform light work as defined in 20 C.F.R. § 416.967(b) with additional limitations, including the ability to switch between sitting and standing.  Finally, the ALJ concluded that Washington could not perform any of her past work but, based on the vocational expert's findings, there were a sufficient number of jobs in the national and local economy that she could perform and that she was therefore not disabled.  In reaching that decision, the ALJ decided to give partial weight to both Dr. Borlaza and Dr. Herrera's opinions.  The ALJ explained that Dr. Herrera's opinion was not supported by the record because he provided no explanation for Washington's limitations with respect to heights, machinery, driving, or air quality restrictions. The ALJ also explained that Dr. Herrera's treatment notes did not support the drastic limitations in sitting and walking.  Further, the ALJ noted that Dr. Herrera's opinion was internally inconsistent because he opined that Washington could not sit for any period of time but then stated that she could sit for up to two hours in a day.

   C.  Appeals Council Decision

     Washington appealed the ALJ's decision and submitted additional records to the Appeals Council, including November 20–21, 2014, Mental Health Inpatient treatment notes from Northeast Alabama Regional Medical Center; a Medical History Questionnaire and Eye Examination from Cherokee Eye Clinic, dated

February 10 and April 30, 2015; and a Psychological Evaluation from Dr. David Wilson at Gadsden Psychological Services, dated January 11, 2016.[2]  Dr. Wilson stated that he reviewed Washington's records from Dr. Herrera, Quality of Life Health Services, and Northeast Alabama Regional Medical Center.  Dr. Wilson's evaluation confirmed previous diagnoses of depression and PTSD.  Dr. Wilson also stated that Washington could not carry out short and simple instructions, maintain concentration for more than two hours, perform activities within a schedule, respond to criticism from supervisors, or interact appropriately with coworkers.  Dr. Wilson also stated that Washington would miss 30 out of every 30 days of work and that all of the limitations listed on the form had existed since February 2013.

The Appeals Council denied Washington's request for review of the ALJ's decision on March 21, 2016.  The Appeals Council stated that it looked at the additional evidence Washington submitted but that it had concluded the evidence was "about a later time" and therefore did not affect the ALJ's decision about whether Washington was disabled on or before October 31, 2014, the date that the ALJ issued its decision.

---

[2] Of the three categories of new evidence presented to the Appeals Council, Washington relies upon only one in this appeal, *i.e.*, the evidence contained in Dr. Wilson's evaluation.

D.  District Court Decision

Washington then filed the present action in the district court, challenging the final decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g).  The parties consented to jurisdiction by a United States magistrate judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.[3]  The district court affirmed the Commissioner's decision that Washington was not disabled and, accordingly, affirmed the ALJ's and Appeals Council's decisions. In particular, the district court concluded that substantial evidence supported the ALJ's decision to assign little weight to Dr. Herrera's opinion because it was internally inconsistent, contradicted by the record, and inconsistent with the doctor's own notes.  The district court also determined that Dr. Wilson's treatment notes were cumulative and irrelevant because they merely confirmed Washington's diagnoses of depression and PTSD.  The district court also noted that Washington failed to establish the materiality and chronological relevance of the new records (including Dr. Wilson's notes) to her SSI claim.

## II.    STANDARDS OF REVIEW

We review de novo the Commissioner's conclusions of law and the judgment of the district court.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d

---

[3] We refer to the magistrate judge as the district court throughout.

1253, 1260 (11th Cir. 2007).  "The Commissioner's factual findings are conclusive if supported by 'substantial evidence.'"  Id. (quoting 42 U.S.C. § 405(g)).

## III.  DISCUSSION

Washington alleges three errors: (1) the ALJ erred by giving only partial weight to her treating physician's opinion; (2) the Appeals Council erred by refusing to consider new evidence in the form of a subsequent psychological evaluation; and (3) the district court engaged in impermissible post hoc rationalization when it affirmed the Commissioner's decision on appeal.  We address each alleged error in turn.

### A.  Treating Physician's Opinion

An ALJ must give a treating physician's opinion substantial or considerable weight unless (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own records. Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). This Court "will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for" his decision. Hunter v. Soc. Sec. Admin., Comm'r, 808 F.3d 818, 823 (11th Cir. 2015).

Here, the ALJ explained that he concluded Dr. Herrera's opinion was entitled to only partial weight because it was internally inconsistent, not supported

8

by his own treatment records, and contradicted by other evidence in the record. We find each reason supported by the record. First, Dr. Herrera's opinion was internally inconsistent because it stated that Washington could sit for a maximum of zero hours at one time—but could sit for a total of two hours in an eight-hour day. Second, Dr. Herrera's opinion that Washington had significant limitations in sitting, standing, and walking (at most two hours each in an eight-hour day) is inconsistent with his own treatment notes, which do not document any problems with sitting, standing, or walking. His treatment notes also do not show any reason for the limitations related to activities involving heights, machinery, driving, dust, fumes, or gases. Third, Dr. Herrera's opinion directly conflicts with Dr. Borlaza's opinion that Washington had no limitations in standing or sitting and could walk between six and eight hours per day. Unlike Dr. Herrera's opinion, Dr. Borlaza's opinion was consistent with his treatment notes, which showed that Washington could walk normally and tested normally in both toe-heel testing and hop testing. Taken together, these reasons provide sufficient justification for the ALJ's decision. Accordingly, the ALJ was entitled to give Dr. Herrera's opinion less than considerable weight.

B. Psychological Evaluation

Typically, a Social Security claimant may present new evidence at each stage of the administrative process, including before the Appeals Council. Ingram,

9

496 F.3d at 1261. The Appeals Council "must consider new, material, and chronologically relevant evidence" submitted by the claimant. Id.  Whether evidence is new, material and chronologically relevant is a question of law subject to de novo review. Washington v. Soc. Sec. Admin., Comm'r, 806 F.3d 1317, 1321 (11th Cir. 2015).  Nevertheless, the Appeals Council is not required to provide "a detailed rationale for why each piece of new evidence submitted to it does not change the ALJ's decision." Mitchell v. Comm'r, Soc. Sec. Admin., 771 F.3d 780, 784 (11th Cir. 2014).  It is sufficient, for example, for the Appeals Council to explain that the new records were "about a later time" and therefore did not relate to the ALJ's earlier decision. Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1309 (11th Cir. 2018).

Evidence is "new" only if it is not cumulative of evidence already presented to the ALJ. Caulder v. Bowen, 791 F.2d 872, 877 (11th Cir. 1986).  Evidence is "material" when a reasonable possibility exists that the evidence would change the administrative result. Washington, 806 F.3d at 1321.  And evidence is "chronologically relevant" if it relates to the period on or before the date of the ALJ's hearing decision. 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5).  Medical opinions based on treatment that occurred after the date of the ALJ's decision may be chronologically relevant if they relate back to the relevant period. Washington, 806 F.3d at 1322–23.  In Washington, we concluded that a medical opinion based

10

on treatment occurring after the ALJ's decision was chronologically relevant because (1) it was based on the claimant's description of his mental health symptoms during the relevant period, (2) the evaluating psychologist had reviewed the claimant's mental health treatment records from the relevant period, and (3) there was no evidence of the claimant's mental health decline since the ALJ's decision.  Id. at 1319, 1322–23.

Here, Washington argues that the Appeal Council failed to sufficiently explain its decision because it stated only that Dr. Wilson's report was "about a later time" and thus irrelevant to Washington's claim.  But that argument is foreclosed by this Court's precedent in Hargress, where this Court concluded it was sufficient for the Appeals Council to explain that it was rejecting newly submitted evidence because it was "about a later time" and therefore irrelevant to the applicant's claim.  Hargress, 883 F.3d at 1309.

Washington's only argument that Dr. Wilson's evaluation is chronologically relevant is a sentence pointing out that the evaluation "confirmed the diagnosis of depression and post-traumatic disorder shown in the records of Dr. Pascual Herrera."  However, that argument does not show that the evidence is chronologically relevant.  In fact, the argument utterly fails to show how Dr. Wilson's evaluation relates to the time period on or before the ALJ's decision. In fact, it establishes that the Appeals Council also could have rejected the evidence

on the grounds that it was cumulative and therefore not new.  See Caulder, 791 F.2d at 877.

C.  Post Hoc Rationalization

Lastly, Washington argues the district court erred by affirming the ALJ and Appeals Council decisions for reasons not articulated by the Appeals Council— namely, that she failed to show that the new evidence was material and chronologically relevant.

We disagree.  The Appeals Council concluded that the new evidence was "about a later time," and therefore did not affect the ALJ's decision that Washington was not disabled on or before the date of that decision.  The district court affirmed because Washington failed to show that the evidence was chronologically relevant.  Because chronologically relevant evidence is evidence that "relates to the period on or before the date of the [ALJ's] decision," 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5), the district court did not engage in post hoc rationalization but rather accurately stated and applied the law.

AFFIRMED.

12